## BUCK *v.* BANK OF THE STATE OF GEORGIA.

1. A contract, whatever be its form, by which one obligates himself to pay the debt of another in consideration of credit or indulgence or other benefit given to his principal, the principal remaining bound for the debt, is a contract of suretyship. Under the provisions of our code, "if the fact of suretyship does not appear on the face of the contract, it may be proved by parol."

2. It follows from the above, that where a person is sued on a promissory note which he has signed as maker, he may show by parol that the note sued on and certain other papers were contemporaneously executed and constituted parts of one transaction; that the real effect of the entire contract and the intention of all the parties were to make him a surety only; and that, as surety, he has been discharged by reason of the fact that, without his consent and for a valuable consideration, the creditor granted the real principal a definite extension of the time of payment.

Argued April 30, — Decided May 27, 1898.

Complaint on note.    Before Judge Reid.    City court of Atlanta.    September term, 1897.

*Arnold & Arnold* and *King & Anderson*, for plaintiff in error.
*John L. Hopkins & Sons* and *L. Z. Rosser*, contra.

SIMMONS, C. J.    The Bank of the State of Georgia brought its action against Buck as maker, and Scott as indorser, upon a promissory note for $2,000, the note stating on its face that it

was given for the purchase-money of land.   Scott made no defense.   Buck filed a special plea in which he alleged, among other things, that, although he signed the note as maker, he was in fact simply a surety and received no benefit on account of the note; that this was known to the bank at the time it took the note as security for a note for $1,500, made contemporaneously to the plaintiff by Scott; that on the $1,500 note the plaintiff advanced Scott $1,500, less the discount; that plaintiff, without Buck's consent and for a valuable consideration, extended the time of payment of Scott's note, and that he had been thereby released as surety.   On the trial the plaintiff introduced the $2,000 note, signed by Buck as maker, made payable to Scott and by him indorsed to the bank; Scott's individual note to the bank for $1,500, reciting that Scott had deposited with the bank as collateral security for its payment a ·note given him by Buck in payment for certain land; a letter addressed to the president of the bank and signed by Scott, stating that the latter had deposited Buck's note as collateral security for his note, and that he had executed titles to the land to Buck and placed the deed in the hands of the bank as an escrow to be delivered to the grantee when he should pay the $2,000 note; and also the deed from Scott to Buck, purporting to convey the land referred to in the other papers.   The defendant Buck offered his own testimony and that of Scott, in support of his plea.   This evidence was objected to by the plaintiff, and excluded by the court.   The court then directed a verdict for the plaintiff.   To the exclusion of the evidence offered, and to the direction of the verdict, Buck excepted.   The evidence offered was substantially as follows:   The notes introduced by the plaintiff represented a loan to Scott, and Buck was surety only.   Scott applied to the bank for a loan, and offered to give his note secured by a deed to the land; but this was refused, the bank requiring an indorser as well.   Scott told the president of the bank that he would get Buck to indorse the note; and upon the suggestion of the president of the bank, the parties agreed that the accommodation should take the shape of a conveyance of land from Scott to Buck, so as to appear upon its face to be a purchase-money transaction.   In pursuance

of this agreement, Buck made his note to Scott and Scott indorsed it to the bank; Scott made the deed to Buck and deposited it with the bank to secure Buck, writing the letter above mentioned; and Scott gave the bank his own note for $1,500. The bank advanced Scott the amount of his individual note, less discount, and kept the other papers for the purpose of securing this indebtedness. Buck gave his note solely to secure the debt and thereby enable Scott to borrow the money; and it was understood by all the parties that Buck had not bought the land, did not intend to buy it, and had paid nothing on it, and that the note was simply for Scott's accommodation. The president of the bank knew all these things, and it was through his suggestion that Buck's obligation took the shape it did. Buck had no interest in the money borrowed by Scott; he saw the deed made by Scott to him, and assented to it because he thought it would secure him in the event that he, as surety, should have to pay Scott's debt. After the maturity of Scott's note, the bank extended it every thirty days for about two years, extending the note each time for thirty days, agreeing not to attempt to collect it within that time, and receiving for each such extension a valuable consideration. Buck did not consent to these extensions or have any knowledge of them. Scott has not entirely paid his note, but Buck did not know of his failure to pay until two years after the note had matured. Scott is now insolvent.

We think the court erred in excluding this testimony. Had it been admitted, it was sufficient to have authorized a finding that Buck was simply a surety for Scott; that the bank, for a valuable consideration and without Buck's consent, had indulged Scott for a specified time; and that Buck had been thereby discharged from his liability. It is claimed by the defendant in error, that Buck having signed the note as maker and having been sued upon it as such, and the note stating upon its face that it was given for the purchase-money of land, parol evidence could not be introduced to vary or change the written contract; that to show by parol that Buck was a surety only would be to violate the rule that written contracts can not be changed by parol. It is a well-known rule that parol con-

temporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument; but this, as other general rules, has its exceptions. The legislature of this State, as early as December 20, 1826, made one of these exceptions. By an act of that date it was provided that "when any person or persons hath heretofore or shall hereafter become bail on recognizance, or security on bond, note, or other contract, and shall be sued thereon, it shall and may be lawful for such bail or security on the trial of such case to make special defense; and in case it should appear to the court that one or more of the defendants is or are securities only, and not interested in the consideration of the contract sued on, then and in such case verdict and judgment shall be entered accordingly, and further proceedings had, and privileges exercised, as hereinbefore prescribed in behalf of other securities." Cobb's Dig. 593. This act has never been repealed, and is now codified, in substance, in section 2984 of the Civil Code, which is as follows: "If the fact of suretyship does not appear on the face of the contract, it may be proved by parol," etc. Thus it seems that, in a suit upon a written contract, a person is allowed to plead and prove that he signed the same as surety only, whether the consideration expressed be merely "for value received" or be specified as certain land, stocks, or other property. This brings us then to the question as to whether the evidence offered was sufficient to show that Buck was surety only upon the note sued on. "The contract of suretyship is that whereby one obligates himself to pay the debt of another, in consideration of credit or indulgence, or other benefit given to his principal, the principal remaining bound therefor." Civil Code, § 2966. "The form of the contract is immaterial, provided the fact of suretyship exists; hence, an accommodation indorser is considered merely as a surety." Civil Code, § 2969. The evidence offered tended to show that Buck signed the note purely for the accommodation of Scott to enable the latter to borrow the money from the bank, that Buck did not receive a cent of the money and had no interest in the loan. He therefore obligated himself to pay Scott's debt in consideration of the credit extended to Scott by the bank, Scott remaining bound for the debt. Hence, under the above-cited

provisions of the code, Buck was only a surety for Scott. It is argued that this would have applied had Buck signed the note for $1,500 on which the money was advanced, but is inapplicable to the present case. We think the form of the contract can make no difference, so it be made to appear from the evidence that Buck was in fact a surety and that this was known to all the parties. The rejected testimony shows that the transaction was fully understood by all the parties, and that the writings were put in the form adopted at the suggestion of the bank's president. If the testimony is true, the bank had full knowledge of the transaction and of the purpose for which Buck signed the note.. The evidence also tends to show that the two notes, the deed, and the letter were all contemporaneously executed, the dates of all these papers being the same, to wit January 26, 1893. The writings themselves and the parol evidence show that the whole constituted but one transaction,—but one contract. That contract was the obligation of Scott as principal, and Buck as surety, to repay to the bank the money advanced to Scott. It therefore makes no difference that Buck signed the note as maker and Scott indorsed it and placed it with the bank as collateral for his individual note. One who signs a note as maker may show by parol that he was in fact only a surety, as was decided in the case of *Hall* v. *Capital Bank*, 71 *Ga.* 715. Nor is the case changed by the fact that the deed to the land was made to Buck and deposited with the bank in escrow. That fact, if it shows anything, shows, in the light of the other evidence, that it was the intention of Scott to secure Buck on account of his suretyship. The deed was worth nothing to the bank. The law allowed Scott to secure his surety; and it would be a new doctrine to hold that where a principal secures his surety, it makes the latter liable as principal and prevents his proving his suretyship.

For these reasons we think that the evidence offered by the defendant was admissible and that the trial judge erred in excluding it. The evidence admitted, when taken in connection with that erroneously rejected, did not demand a verdict for the plaintiff, and the direction of such verdict was error.

*Judgment reversed. All the Justices concurring.*