9743. NATIONAL ROSIN OIL AND SIZE COMPANY *v.* SOUTH ATLANTIC COAL COMPANY.

The evidence authorized a finding that the minds of the parties did not meet upon the terms of the alleged contract on which the defendant's plea was based, and therefore that there was no such contract.

DECIDED NOVEMBER 20, 1918.

Complaint; from city court of Savannah—Judge Freeman. April 11, 1918.

*Osbor..e, Lawrence & Abrahams,* for plaintiff in error.

*Adams & Adams,* contra.

BROYLES, P. J.   This action was brought by the South Atlantic Coal Company against the National Rosin Oil & Size Company, upon an open account for coal sold and delivered to the latter corporation in the month of October, 1916, amounting to $1,349.61. In its answer to the petition the defendant denied the indebtedness alleged, and filed a plea of recoupment, setting up that by reason of the breach by the plaintiff of an alleged contract to supply the defendant with coal for the period of one year from October 1, 1916, to October 1, 1917, the defendant had been forced to buy coal in the open market to meet its requirements, and, as a result thereof, had been damaged in the sum of $10,803.65. By consent of the parties the case was tried before the judge of the city court of Savannah without a jury. Upon the trial it appeared that negotiations for the supplying of coal by the plaintiff to the defendant for the season of 1916-17 were in progress between the parties for some months previous to September, 1916, and that finally, upon September 28, 1916, the plaintiff sent to the defendant a letter as follows: "Referring to your favor of the 26th inst., we beg to hand you herewith contract made out in accordance with your letter, and which we trust you will find in order." The contract referred to was as follows:

"Savannah, Ga., September 28, 1916.   Contract covering sale of coal made by the South Atlantic Coal Company of Savannah, Georgia, to the National Rosin Oil & Size Co. of Savannah, Georgia. Quantity: Their annual requirements, estimated at between 4,000 and 5,000 tons.

Duration: From Oct. 1, 1916, to Oct. 1, 1917.

Brand: Sacco. Virginia coal.

Quality: Understood and agreed that if at any time quality is not up to standard the National Rosin Oil & Size Co. have the option of cancelling contract.

Price: Three dollars ($3.00) per ton of 2,000 pounds f. o. b. cars their factory, Savannah, Ga.

Weights: All cars to be reweighed at Savannah and such weights to govern settlement. Expense of weighing cars to be borne by seller.

Conditions: Deliveries to be made according to the require-
ments of buyer. Buyers are hereby guaranteed a constant and
regular supply of coal during the life of this contract, and on any
coal reloaded from wharf of sellers due to non-arrival of cars.
Sellers further guarantee that none but Sacco Virginia coal will
be delivered under this contract except upon the written permission
of the buyer.

(Signed)    South Atlantic Coal Company, by L. G. Armstrong,
President.

National Rosin Oil & Size Co., by G. W. Campbell, Asst. Treas."

On October 3, 1916, the defendant sent to the plaintiff a letter,
the material portions of which are as follows: "New York, Oct.
3rd, 1916. The South Atlantic Coal Co., Savannah, Ga. Gentle-
men: We thank you for complying with our desire in drawing up
your contract which has now been signed and your copy is returned
herewith. We have notified our Mr. Carmichael that this new
contract is now in effect, and we presume he will get in touch with
you regarding shipments. We trust the coal will be fully up to
our expectations, and remain, Yours truly, G. W. Campbell, Asst.
Treas. GWC/M. We note you omitted in the last paragraph after
the words 'due to non-arrival of cars' the rest of the sentence as
follows: 'the same delivered price of $3.00 to govern.' Please con-
firm our understanding that the omitted line will be considered by
you as being in the contract. Also the sample car was screened
coal, and price was quoted on screened coal, *so we understand
screened coal will be delivered us.* G. W. C."   (Italics ours.)   It
appears, from the undisputed testimony upon the trial, that there
is a material difference between "screened" and "run-of-the-mine"
coal, and that the former coal commands a higher price. It is
also apparent that the purported contract was silent as to whether
"screened" or "run-of-the-mine" coal was to be delivered. As we
see it, the postscript of the defendant to its letter of October 3,
just quoted, specifically qualifies its acceptance of the proposed con-
tract, making it conditional that "screened" coal was to be deliv-
ered. This attempted change in the contract was promptly
repudiated by the plaintiff, in its letter of October 5, 1916, which
reads as follows: "Acknowledging receipt of your favor of the 3d
inst. beg to advise that it will be satisfactory to us to insert the
words 'the same price of $3.00 to govern' after the words 'due to

non-arrival of cars', in our contract. In regard to the screened coal, we beg to say that we submitted to you a proposition on screened coal months ago and had you try a car; you gave us no satisfaction or answer to our proposition, but on the other hand continued to try other kinds of coal. The screen coal that we had submitted you has been withdrawn from this market and *the price quoted you in the contract is for Sacco Virginia run of the mine coal.* If it is not satisfactory advise us at once and it will be agreeable to us to cancel this contract, but we must have a decision from you at once whether you have accepted our contract as signed or not." (Italics ours).

The defendant failed to reply to this letter (which demanded a reply from the defendant if the latter sought to enforce any right under the contract), or to other communications of the plaintiff on the same subject, until November 3, 1916, when it sent the following telegram to the plaintiff: "Your letter October 31st received. Our contract with you dated September 28th speaks for itself.. Your letter Oct. 5th asks reply unless satisfactory, therefore we made no reply. Referring to your letter October 27th and 31st we decline to recognize obstacles referred to and shall cover for your account and sue for difference and damages including possible shutdown, unless you wire immediately that contract will be fulfilled." In the meantime, however, the defendant had ordered and received from the plaintiff seven cars of coal, which were charged to him at the market prices then in effect, and it is these carloads of coal which are the subject of the suit.

It is clear that the minds of the parties never met in the very essential particular of the *kind* of coal to be supplied under the proposed contract. It is true that the document purporting to set out all of the terms and conditions of the contract was formally signed by both parties, but under that contract the plaintiff agreed to furnish "Sacco Virginia" coal, which, according to its letter of October 5, was "run of the mine," while the defendant was expecting that "screened" coal would be supplied, *upon which basis its signature was attached.* This contemporaneous stipulation was in writing and accompanied the formal "contract" returned to the plaintiff on October 3, and this conditional acceptance—the condition being declined by the other party—did not and could not constitute a complete, valid contract. The contemporaneous written

qualification, although written upon a separate paper, was as much a part of the proposed contract as if it had been written into the "contract" on the same paper. To arrive at the intent of the parties, and to determine whether a completed contract was made, the two writings must be considered together. See, in this connection, Civil Code, § 5789; *Marietta Savings Bank* v. *Janes,* 66 *Ga.* 286; *Montgomery* v. *Hunt,* 93 *Ga.* 438 (2) (21 S. E. 59); *Buck* v. *Bank,* 104 *Ga.* 660 (2) (30 S. E. 872); *Cable Co.* v. *McFeeley,* 7 *Ga. App.* 435, 436 (66 S. E. 1103); *International Harvester Co.* v. *Morgan,* 19 *Ga. App.* 723 (92 S. E. 35). The fact that the plaintiff itself, in its letter declining to agree to the defendant's suggested change as to screened coal, refers to the purported contract as a "contract" and suggests its *cancellation* is immaterial, and is insufficient, in connection with the other facts disclosed, to show that the proposed contract had in fact been completed. It appears from the correspondence introduced that both parties referred to the purported contract as a "contract" before it had ever been executed by the defendant. The fact that the plaintiff's letter calls it a "contract" does not make it one, especially since in the same letter the plaintiff expressly refuses its assent to the new condition written into the contract by the defendant. *Robinson* v. *Weller,* 81 *Ga.* 704, 708 (8 S. E. 447).

The court, exercising by consent the functions of both judge and jury, did not err in finding that there had been no meeting of the minds of the parties upon a very essential element of the contract, and that the contract was accepted by the defendant with a condition; that accordingly no valid contract existed between them; that necessarily, therefore, the defendant's plea of recoupment should not prevail, and that under the facts of the case the plaintiff was entitled to recover the market value of the coal delivered to the defendant.

*Judgment affirmed. Bloodworth and Harwell, JJ., concur.*